<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| HAROLD MILLER, | : | |
| | : | Civil Action No. 10-2397 (KSH) |
| Plaintiff, | : | |
| | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| CHRIS CHRISTIE, et al., | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

> HAROLD MILLER, Plaintiff <u>pro se</u>
> #000284
> S.T.U./N.R.U.
> 30-35 Hackensack Avenue, P.O. Box 699
> Kearny, New Jersey 07032

**HAYDEN**, District Judge

Plaintiff, Harold Miller, who was involuntarily committed under the Sexually Violent Predator Act ("SVPA"), <u>N.J.S.A.</u> 30:4-27.24, <u>et</u> <u>seq.</u>, seeks to bring this action <u>in</u> <u>forma</u> <u>pauperis</u>. Based on his affidavit of indigence, the Court will grant plaintiff's application to proceed <u>in</u> <u>forma</u> <u>pauperis</u> ("IFP") pursuant to 28 U.S.C. § 1915(a) (1998) and order the Clerk of the Court to file the Complaint.

At this time, the Court must review the Complaint, pursuant to 28 U.S.C. § 1915(e)(2), to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary

relief from a defendant who is immune from such relief.  For the reasons set forth below, the Court concludes that the Complaint should be dismissed without prejudice.

## I.  BACKGROUND

Plaintiff, Harold Miller ("Miller"), brings this civil rights action, pursuant to 42 U.S.C. § 1983, against the following defendants: Chris Christie, the Governor of New Jersey; Paula Dow, Attorney General for the State of New Jersey; Gary Lanigan, Commissioner of the New Jersey Department of Corrections ("NJDOC"); Jennifer Velez ("Velez"), Commissioner of the New Jersey Department of Human Services ("NJDHS"); Steven Johnson ("Johnson"), NJDOC Administrator; and Merril Main ("Main"), NJDHS Administrator.  (Compl., Caption and ¶¶ 4b-4g.)  The following factual allegations are taken from the Complaint, and are accepted for purposes of this screening only.  The Court has made no findings as to the veracity of plaintiff's allegations.

Miller alleges that, on April 14, 2010, defendants Main and Johnson told plaintiff and other residents at the Northern Regional Unit ("NRU") in Kearny, N.J., that they were going to be transferred to the East Jersey State Prison ("EJSP").  The prison facility would supply the residents with "prison meals," and they wold be housed in the administrative segregation unit at EJSP. Main further told the residents that they would likely be idle for a month while the facility was being fixed up to be suitable

for civilly committed persons.  (Compl., ¶ 6, Statement of Claims.)

On April 24, 2010, Miller learned that the NJDOC was changing the name of the EJSP administrative segregation unit to be called the "Special Treatment Unit."  On April 26, 2010, Johnson told plaintiff that the residents would be under the supervision of EJSP correctional officers and an elite force of guard dogs to make sure the residents follow prison rules.  Plaintiff told Johnson on April 28, 2010, that transferring him onto prison property violated his constitutional rights.  (<u>Id.</u>)

On April 30, 2010, plaintiff was informed that the unit at EJSP did not have good drinking water.  It also had poor air circulation, cold showers, non-adjustable windows, and no kitchen facility.  (<u>Id.</u>)

Miller asks that he be provided with "the proper treatment of a federally funded facility."  He also seeks an unspecified amount in compensatory damages for the mental anguish and stress that he is suffering as a result being transferred to a prison facility.  (Compl., ¶ 7.)

## II. <u>STANDARDS FOR A SUA SPONTE DISMISSAL</u>

A district court is required, pursuant to 28 U.S.C. § 1915(e)(2)(B), to review a complaint in a civil action where the litigant is proceeding <u>in forma pauperis</u> to identify cognizable claims and to <u>sua sponte</u> dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. Miller is proceeding <u>in forma pauperis</u> in this matter, so this action is subject to <u>sua sponte</u> screening for dismissal.

A court considering the sufficiency of a <u>pro se</u> complaint must construe it liberally in favor of the plaintiff. <u>See Erickson v. Pardus</u>, 551 U.S. 89, 93-94 (2007)(following <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976) and <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972)). <u>See also United States v. Day</u>, 969 F.2d 39, 42 (3d Cir. 1992). The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997). The Court need not, however, credit a <u>pro se</u> plaintiff's "bald assertions" or "legal conclusions." <u>Id.</u>

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the

4

former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one.  Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

To prevent a summary dismissal, civil complaints must allege "sufficient factual matter" to show that a claim is facially plausible.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210(3d Cir. 2009).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  "Determining whether a complaint states a plausible claim for relief [is] a context-specific task," id. at 1950, which the Third Circuit dictates must be a two-part inquiry:

> First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [Iqbal, 129 S.Ct. at 1949-50].  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." [Id.]  In other words, a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to "show" such an entitlement with its facts.  See Phillips, 515 F.3d at 234-35.

Fowler, 578 F.3d at 210-211.

This Court is mindful, however, that the sufficiency of this pro se pleading must be construed liberally in favor of Plaintiff, even after Iqbal.  See Erickson v. Pardus, 551 U.S. 89 (2007).  Moreover, a court should not dismiss a complaint with

prejudice for failure to state a claim without granting leave to amend, unless it finds bad faith, undue delay, prejudice or futility.  See Grayson v. Mayview State Hosp., 293 F.3d 103, 110-111 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 117 (3d Cir. 2000).

### III.   SECTION 1983 ACTIONS

Miller brings this action pursuant to 42 U.S.C. § 1983. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

### IV.   THE NEW JERSEY SEXUALLY VIOLENT PREDATOR ACT

The New Jersey SVPA, N.J.S.A. 30:4-27.24 *et seq.*, provides for the custody, care and treatment of involuntarily committed persons who are deemed to be sexually violent predators ("SVP"). N.J.S.A. 30:4-27.26.  The New Jersey Department of Corrections

("DOC") operates the facilities designated for SVPs, <u>N.J.S.A.</u> 30:4-27.34(a); and the New Jersey Department of Human Services ("DHS") provides for their treatment.  <u>N.J.S.A.</u> 30:4-27.34(b). The SVPA was amended in 2003 to require that regulations be promulgated jointly by the DOC and the DHS, in consultation with the Attorney General, taking "into consideration the rights of the patients as set forth in section ten of P.L. 1965, c. 59 (C. 30:4-24.2) ... [to] specifically address the differing needs and specific characteristics of, and treatment protocols related to, sexually violent predators." <u>N.J.S.A.</u> 30:4-27.34(d).

In passing the SVPA, the New Jersey Legislature made specific findings regarding SVPs. <u>N.J.S.A.</u> 30:4-27.25.  The Legislature noted that it was necessary to modify the previous civil commitment framework and additionally separate SVPs from other persons who have been civilly committed. <u>Id</u>.  The SVPA defines an SVP as:

> ... a person who has been convicted, adjudicated delinquent or found not guilty by reason of insanity for commission of a sexually violent offense, or has been charged with a sexually violent offense but found to be incompetent to stand trial, and suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for control, care and treatment.

<u>N.J.S.A.</u> 30:4-27.26(b).

Those persons committed under the SVPA shall receive annual review hearings.  <u>N.J.S.A.</u> 30:4-27.35.  An SVP may be released

from involuntary civil commitment upon recommendation of the DHS or by the SVP's own petition for discharge.  N.J.S.A. 30:4-27.36.

V.  ANALYSIS

A.  Transfer to Prison Facility Claim

Miller seeks to prevent his transfer to a prison facility because, he claims, it is unconstitutional to transfer a civilly committed person like him to a prison.  At the time this Complaint was filed, however, the transfer had been effectuated.

In Kansas v. Hendricks, 521 U.S. 346 (1997), the Supreme Court of the United States examined the conditions of confinement provided for by Kansas' Sexually Violent Predator Act.  The Act called for the confinement of sexually violent predators in a secure facility because they were dangerous to the community. Id., 521 U.S. at 363-64.  Pertinent here, the Supreme Court was aware that the sexually violent predators in Kansas were to be held in a segregated unit within the prison system.  However, the Court noted that the conditions within the unit were essentially the same as conditions for other involuntarily committed persons in mental hospitals.  Moreover, confinement under the Act was not necessarily indefinite in duration, and the Act provided for treatment.  Id., 521 U.S. at 363, 364, 365-368.  Thus, the Supreme Court held that involuntary confinement under Kansas' SVPA was not unconstitutional so long as such civilly confined persons are segregated from the general prison population and afforded the same status as others who have been civilly

8

committed.  Id., 521 U.S. at 368-69.  See also Seling v. Young,
531 U.S. 250, 261062 (2001)(holding same with respect to the
State of Washington's SVPA).

Here, the New Jersey SVPA is essentially the same as the
Kansas and Washington SVP statutes that were examined and upheld
by the Supreme Court in Hendricks and Seling, respectively.[1]  See
Bagarozy v. Goodwin, Civil Action No. 08-468 (SRC), 2008 WL
4416455, *7-8 (D.N.J. Sept. 23, 2008); In re Commitment of W.Z.,
173 N.J. 109, 801 A.2d 205, 211 (2002).  Therefore, this Court
finds that Miller's transfer to a segregated unit in the East
Jersey State Prison does not, in and of itself, violate the U.S.
Constitution's Due Process Clause.  Moreover, because the
transfer has now been effected, plaintiff's claim for injunctive
relief to prevent the transfer to EJSP is moot.  Therefore,
Miller's claim that his transfer to a segregated unit within a
prison facility is unconstitutional is dismissed for failure to
state a cognizable claim of a constitutional deprivation.

B.  Conditions of Confinement Claim

Although plaintiff's transfer to a segregated unit within a
prison facility is not, in and of itself, a constitutional

---

[1]  Recently, the Supreme Court held constitutional, under
the Necessary and Proper Clause, a federal statute that allowed a
district court to order the civil commitment of a sexually
dangerous federal prisoner beyond the date the prisoner would
otherwise be released.  United States v. Comstock, No. 08-1224,
__ U.S. __, 130 S.Ct. 1949 (May 17, 2010).  Although these
civilly committed persons remained confined at a federal prison,
namely, FCI Butner, the Court did not address their place of
civil confinement as being unconstitutional.

violation, Miller makes additional allegations concerning the
conditions of confinement at the EJSP facility.  For instance, he
complains that he will be housed in a 23-hour lock-down facility.
However, Miller also states that Main had told the residents that
there would be a period of time needed to make suitable living
quarters for the civilly committed residents.  See Youngberg v.
Romeo, 457 U.S. 307, 321-22 (1982)("Persons who have been
involuntarily committed are entitled to more considerate
treatment and conditions of confinement than criminals whose
conditions of confinement are designed to punish.").

Generally, the Fourteenth Amendment requires that civilly
committed persons not be subjected to conditions that amount to
punishment, Bell v. Wolfish, 441 U.S. 520, 536 (1979),[2] within
the bounds of professional discretion, Youngberg, 457 U.S. at
321-22.  Specifically, in Youngberg, the Supreme Court held that
civilly committed persons do have constitutionally protected
interests, but that these rights must be balanced against the
State's reasons for restricting their liberties.  Id. at 307.
The Constitution is not concerned with de minimis restrictions on
patients' liberties.  Id. at 320.  Moreover, "due process
requires that the conditions and duration of confinement [for

---

[2]  In Bell v. Wolfish, the Supreme Court held that whether a
condition of confinement of pretrial detainees violated their
constitutional rights turns on whether the disability is imposed
for the purpose of punishment or whether it is but an incident of
some other legitimate government purpose.  441 U.S. 520, 535-39,
(1979).

civilly confined persons] bear some reasonable relation to the purpose for which persons are committed." Seling, 531 U.S. at 265.  While the nature of an SVP's confinement may factor in the balance of what is reasonable, it is clearly established that the substantive due process protections of the Fourteenth Amendment apply to SVPs.  See Andrews v. Neer, 253 F.3d 1052, 1061 (8th Cir. 2001)(applying the Fourteenth Amendment's "objective reasonableness" standard to excessive force claims brought by civilly committed SVPs).

Miller's main allegation with respect to the conditions of his confinement relates to his contention that he is now housed in a 23-hour lock-down facility.  However, Miller acknowledges in his Complaint that these conditions are merely temporary until the "Ad Seg Unit" is renovated for the SVP residents.  The administrators told plaintiff and the other SVP residents that it would take a month or two at most to complete renovations to accommodate the less restrictive and treatment-oriented environment suitable for civilly committed SVPs.

Moreover, even if plaintiff has temporary restrictions, the Third Circuit has held that placement of a civilly committed SVP in segregated confinement does not violate due process unless the deprivation of liberty is in some way extreme.  See Deavers v. Santiago, 243 Fed. Appx. 719, 721 (3d Cir. 2007)(applying Sandin

v. Conner, 515 U.S. 472 (1995),[3] to segregated confinement of civilly committed SVPs).  See also Thielman v. Leean, 282 F.3d 478 (7th Cir. 2002)(likewise extending Sandin to civil commitment settings).  As stated above, Miller's complaints about the restrictions on his confinement are minimal and clearly temporary.

Miller also alleges that he was told that there was no air circulation at EJSP, no hot showers, no adjustable windows, no kitchen facility, and allegedly unsafe drinking water.  These allegations are merely speculative, as plaintiff was not confined at EJSP at the time he made these allegations in his Complaint.

Therefore, Miller has failed to state cognizable conditions of confinement claims, and his claims will be dismissed without prejudice.  To the extent that Miller can allege facts to show that unconstitutional conditions of confinement exist and have continued for a longer period of time than suggested by the NJDHS and NJDOC administrators, Miller may seek leave to re-open this case and file an amended pleading.[4]

---

[3]  In Sandin, the Supreme Court held that there was no cognizable liberty interest in freedom from additional restraint in a prison setting.  See 515 U.S. at 486 ("We hold that [the prisoner's] discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest.").

[4]  Should plaintiff so choose to amend his Complaint to cure the deficiencies noted herein, pursuant to Federal Rule of Civil Procedure 15, Miller should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically

C.  Interruption of Treatment Claim

Finally, Miller asserts that he will be denied the Fourteenth Amendment right to adequate treatment and reasonable care applicable to civilly committed SVPs because he will be denied therapy/treatment sessions as a result of the transfer to EJSP.

The Fourteenth Amendment to the U.S. Constitution, § 1, guarantees that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law."  This due process guarantee has been interpreted to have both procedural and substantive components, the latter of which protects fundamental rights that are so "implicit in the concept of ordered liberty" that "neither liberty nor justice would exist if they were sacrificed."  Palko v. Conn., 302 U.S. 319, 325 (1937). These fundamental rights include those guaranteed by the Bill of Rights, as well as certain liberty and privacy interests implicitly protected by the Due Process Clause, such as the right to marry.  Washington v. Glucksberg, 521 U.S. 702, 720 (1997). Substantive due process also protects against government conduct that is so egregious that it "shocks the conscience," even where

---

incorporated in the new [complaint]."  6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed. 1990) (footnotes omitted).  An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit.  Id.  To avoid confusion, the safer course is to file an amended complaint that is complete in itself.  Id.

the conduct does not implicate any specific fundamental right. See United States v. Salerno, 481 U.S. 739, 746 (1987).

Laws disturbing fundamental rights receive strict scrutiny and will be upheld if they are "narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993). However, regulations not implicating fundamental rights (in other words, those claims attacking particularly egregious or arbitrary governmental actions) are analyzed under the deferential standard referred to as rational basis review, and will generally succeed only if the government action shocks the conscience. See Glucksberg, 521 U.S. at 728.

With respect to Miller's claim, it appears that he is asserting that he has a fundamental right to adequate treatment as a civilly committed sex offender. The Supreme Court established that mentally retarded persons confined at a state institution have a constitutionally protected right to minimally adequate treatment. Specifically, the Supreme Court held that there is a constitutional right of mentally disabled persons confined at a state institution to "minimally adequate habilitation," self-care treatment or training to the extent necessary to protect their recognized fundamental rights to safety and freedom from physical restraints. Youngberg, 457 U.S. at 316, 319 and 322.

The Supreme Court further held that, where a fundamental right is at issue, a district court must balance "the liberty of

14

the individual and the demands of an organized society" to determine whether such right has been violated. _Youngberg_, 457 U.S. at 320.  Although restrictions burdening a fundamental right generally receive strict scrutiny, in _Youngberg_, the Supreme Court found that this sort of rigorous analysis would unduly burden the ability of states, specifically their professional employees, to administer mental health institutions. _Id._ at 322. Consequently, the Court concluded that "the Constitution only requires that the courts make certain that professional judgment was in fact exercised," because "[i]t is not appropriate for the courts to specify which of several professionally acceptable choices should have been made." _Id._ at 321 (internal quotation and citation omitted).  Thus, a decision, "if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such judgment." _Id._ at 323.

In _Leamer v. Fauver_, 288 F.3d 532 (3d Cir. 2002), the United States Court of Appeals for the Third Circuit held that New Jersey's unique former statutory scheme for sex offenders that predicated the term of sentence on a prisoner's response to treatment and created a right to treatment created a fundamental and cognizable liberty interest in treatment, for purposes of both procedural and substantive due process analyses.  288 F.3d

at 545.  Leamer was not a civilly committed sex offender; rather, he was a *convicted* sex offender whose confinement and treatment were inextricably linked pursuant to statute.  The sentencing court had classified Leamer as having a "mental aberration" and in need of "specialized treatment," which automatically subjected him to the maximum incarceration permitted by law unless he is cured prior to that point.  Leamer could not reduce his sentence through good behavior credits, parole policies or other credits.  Instead, he could only shorten his incarceration through successful therapy, which was an "inherent and integral element" of the statutory scheme.  Consequently, the Third Circuit found that deprivation of treatment would be a grievous loss not emanating from the sentence.  <u>Leamer</u>, 288 F.3d at 544.

The Court finds that the Third Circuit's holding in <u>Leamer</u> extends to an involuntarily committed sex offender under New Jersey's SVPA.  Like Leamer, the length of Miller's confinement under the SVPA is predicated on his response to treatment.  Indeed, the provisions of the SVPA explicitly recognize New Jersey's obligation to provide treatment to SVPs and states that successful therapy is a basis for release.  See <u>N.J.S.A</u>. 30:4-27.32(a)("If the court finds by clear and convincing evidence that the person needs continued involuntary commitment as a sexually violent predator, it shall issue an order authorizing the involuntary commitment of the person to a facility designated for the custody, care and *treatment* of sexually violent

predators")(emphasis added); <u>N.J.S.A.</u> 30:4-34(b)("The Division of Mental Health Services in the Department of Human Services shall provide or arrange for treatment for a person committed pursuant to this act.  Such treatment shall be appropriately tailored to address the specific needs of sexually violent predators."); <u>N.J.S.A.</u> 30:4-27.36(a)("At any time during the involuntary commitment of a person under this act, if the person's treatment team determines that the person's mental condition has so changed that the person is not likely to engage in acts of sexual violence if released, the treatment team shall recommend that the Department of Human Services authorize the person to petition the court for discharge from involuntary commitment status"); <u>see also</u> <u>Kansas v. Hendricks</u>, 521 U.S. 346, 367 (1997)(concluding from similarly-worded provisions of Kansas' SVP Act that "the State has a statutory obligation to provide 'care and treatment for [persons adjudged sexually dangerous] designed to effect recovery' ....")(alterations in original)(internal citations omitted).

Though Miller may have a fundamental liberty interest in treatment, he has not stated a cognizable claim for purposes of both procedural and substantive due process analyses.  <u>See</u> <u>Bailey v. Gardebring</u>, 940 F.2d 1150, 1154 (8th Cir. 1991), <u>cert</u>. <u>denied</u>, 503 U.S. 952 (1992)(where the Eighth Circuit noted that <u>Youngberg</u> did not establish a right for the civilly committed to treatment <u>per se</u>; the Supreme Court only "held that the Constitution

17

required only such 'minimally adequate training ... as may be reasonable in light of [the] liberty interest[ ] in safety and freedom from unreasonable restraints.'")(quoting Youngberg, 457 U.S. at 322). In Bailey, the Eighth Circuit concluded that plaintiff had no right to "psychiatric treatment to overcome a 'sexual offender condition'" because he "was neither in danger during his civil commitment nor was he subject to any restraints beyond the ordinary incidents of any involuntary confinement." Id. at 1153, 1154. Citing Bailey, district courts in the Eighth Circuit have since concluded that civilly committed sexual predators have no substantive due process right to mental health treatment, adequate or otherwise. See Semler v. Ludeman, 2010 WL 145275, at *26 (D. Minn. Jan. 8, 2010)("Because this Court has not recognized a constitutional right to effective 'treatment' in the context of civilly committed sex offenders, Plaintiffs [alleging substantive due process violations through ineffective treatment] have failed to allege a due process claim ....")(citing Nicolaison v. Ludeman, 2008 WL 508549, at *8 (D. Minn. Feb. 11, 2008)(finding, in ultimately concluding that involuntarily committed sex offender's right to treatment is not "clearly established" for purposes of 28 U.S.C. § 2254(d)(1), that Youngberg "only recognized a right to 'minimally adequate' treatment that reduces the need for restraints," and not a "comparable right to treatment that facilitates release")).

18

With respect to Miller's right to procedural due process, there does not appear to be any basis to plaintiff's claim that there has been a categorical denial of therapy due to his transfer to EJSP's administrative segregation unit.  In Leamer, the Third Circuit, relying on Sandin, found that Leamer would face "significant obstacles" in establishing a procedural due process claim based on his placement on RAP (restricted activities program) status because the mere fact of placement in administrative segregation is not in and of itself enough to implicate a liberty interest.  Leamer, 288 F.3d at 546.  In the instant case, Miller will not actually be confined in administrative segregation for the purpose of punishment; he and the other SVP residents at the Kearny facility will be housed at EJSP in a unit separate and apart from the convicted prisoners.

Moreover, there is no absolute denial of treatment, only an estimation that treatment might be delayed while the transfer takes place and living quarters are made suitable for the residents.

The Court likewise finds no substantive due process violation at this time.  Substantive due process prevents the government from engaging in conduct that "shocks the conscience," or interferes with rights "implicit in the concept of ordered liberty." Glucksberg, 521 U.S. at 721.  Under this standard, Defendants' actions in denying Miller his statutory right to treatment can only be found unconstitutional under the Fourteenth

19

Amendment if they were so arbitrary or egregious as to shock the conscience.  See Leamer, 288 F.3d at 546-47 (substantive due process claim alleging inadequate treatment for committed sex offender "must focus on the challenged abuse of power by officials in denying [the plaintiff] the treatment regimen that was statutorily mandated and was necessary in order for his condition to improve, and thus for him to advance toward release").

In this case, despite Miller's initial allegation, defendants have not categorically declined to provide any mental health treatment to the SVP residents at EJSP.  They have merely projected a short period during which treatment will be disrupted so as to accomplish the transfer and/or renovation of the segregated unit at EJSP.  Thus, this Court cannot readily conclude that Defendants' actions were conscience-shocking and in violation of Miller's substantive due process rights.  Indeed, plaintiff's allegation before his actual transfer to EJSP is merely speculative and it is not readily apparent that treatment would be disrupted for a significant amount of time.  Cf. Smith v. Campbell, 295 F. App'x 314, 319 (11th Cir. 2008) (temporary denial of anti-anxiety medication did not shock the conscience); Robinson v. Fergot, 2005 WL 300376, at * 7 (W.D.Wis. 2005) (placement of civilly committed individual on "high management status" not an unconstitutional deprivation because it was temporary).

Thus, the Court concludes that treatment has not been denied to the SVP residents as alleged because there is no demonstrated interruption of adequate treatment that would rise to the level of a constitutional due process deprivation as alleged. Any deviation in providing treatment appears to be speculative and merely temporary to accomplish the transfer and renovate the SVP quarters at EJSP. Therefore, this Court concludes that the alleged short-lived disruption of therapy and treatment, if any, has not been shown to be so egregious as to render mental treatment at EJSP conscience-shockingly deficient.

Accordingly, Miller's claim alleging inadequate treatment will be dismissed without prejudice for failure to state a cognizable claim of a deprivation of a constitutional right.

## V. CONCLUSION

For the reasons set forth above, plaintiff's Complaint will be dismissed without prejudice in its entirety as against all named defendants, for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Plaintiff may seek leave to re-open this case to file an amended pleading to cure the deficiencies noted herein. An appropriate order follows.

Katharine S. Hayden
KATHARINE S. HAYDEN
United States District Judge

March 11, 2011